UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


CRAIG A. WETTERMAN,

    Plaintiff,          :     Case No. 2:18-cv-85

  -vs-                Judge Sarah D. Morrison
                  Magistrate Judge Chelsey M. Vascura
SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
*et al.*,
                  :
    Defendants.

## **OPINION AND ORDER**

This matter is before the Court upon Defendants' Motion to Dismiss (ECF No. 5), Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (ECF No. 6), and Defendants' Reply in Support of their Motion to Dismiss (ECF No. 7). For the reasons that follow, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's Complaint.

**I. BACKGROUND**

On October 19, 2008, Barbara Wetterman was involved in a motor vehicle collision caused by the negligence of Charles Wolfe. (Complaint, ¶¶ 3, 22–24, ECF No. 1). Following the accident, Ms. Wetterman was treated for serious injuries at Grant Medical Center, but she died on November 4, 2008. (*Id.* ¶¶ 26, 28). Ms. Wetterman was survived by two adult children: Craig Wetterman ("Plaintiff") and Lana Schurb. (*Id.* ¶¶ 28, 30).

On January 13, 2009, Union County Probate Court ("Probate Court") designated Plaintiff as the executor for Ms. Wetterman's estate. (*Id.* ¶ 31). On January 20, 2009,[1] the Probate Court

---

[1] Although the Complaint states "January 20, 2008[,]" the Court assumes this is a typographical error since Ms. Wetterman died in November of 2008.

1

authorized Plaintiff to enter into a contract for legal services with attorney Frank Ray to "investigate, negotiate and, if necessary, prosecute the wrongful death claim of the estate" of Ms. Wetterman. (*Id.* ¶ 32).

On July 15, 2009, the Probate Court approved Ms. Wetterman's estate's acceptance of a wrongful death settlement and life insurance payout in the amount of $87,500 (*Id.* ¶ 47). The settlement and payout included: $12,500 from Mr. Wolfe's bodily injury coverage through Permanent General Assurance Company ("Permanent"), $100,000 from Ms. Wetterman's uninsured/underinsured motorist ("UM/UIM") coverage through State Automobile Mutual Insurance Company ("State Auto")—set off against Permanent's payout—and a $25,000 life insurance payout from State Auto. (*Id.* ¶¶ 34–35, 41). Included in the application for settlement to the Probate Court was Mr. Ray's statement that "Ms. Wetterman did not exhibit provable evidence of conscious pain and suffering from her injuries. Since evidence of pain and suffering by the decedent as a result of the trauma is speculative based on provable evidence, the estate has not assessed any damages to a survivorship claim arising from the fatal collision." (*Id.* ¶ 46). Pending resolution of any liens asserted by Medicare under the Medicare Secondary Payer Act ("MSP Act"), Mr. Ray deposited the settlement check from Permanent and the life insurance payment from State Auto in his law firm's trust account and State Auto continued to maintain possession of the UM/UIM funds. (*Id.* ¶¶ 48–49).

On October 30, 2009, Mr. Ray notified the Medicare Secondary Payer Recovery Contractor ("MSPRC") and Medicare that Plaintiff had been appointed as the executor of Ms. Wetterman's estate and requested an itemized breakdown of medical costs paid by Medicare for treatment of Ms. Wetterman's injuries. (*Id.* ¶ 50). On January 26, 2010, Mr. Ray followed up with an enclosed consent form signed by Plaintiff. (*Id.* ¶ 51). On July 22, 2010, MSPRC

responded that Medicare had issued $139,832.31 in conditional payments for Ms. Wetterman's medical care, notified Mr. Ray that a formal demand letter would be forthcoming, and demanded a detailed report from Plaintiff regarding sources and amounts of insurance coverage within 30 days. (*Id.* ¶ 52). On August 17, 2010, Mr. Ray provided MSPRC with information regarding the wrongful death settlement. (*Id*. ¶ 53). Mr. Ray received a letter on September 11, 2011 from MSPRC, which included Medicare's demand notice and its asserted lien of $106,096.87 for the cost of medical care relating to Ms. Wetterman's estate's liability recovery. (*Id.* ¶¶ 62–63). The letter also notified Mr. Ray that Medicare had begun assessing interest from August 11, 2011. (*Id.* ¶ 63).

On October 10, 2011, Plaintiff mailed MSPRC a "Request for Waiver and Notice of Appeal," which "described Plaintiff's exceptions to MSPRC's findings that produced Medicare's demanded reimbursement against Mrs. Wetterman's estate's wrongful death settlements and the life insurance payout." (*Id.* ¶¶ 64, 73). Plaintiff also alleges that Mr. Ray enclosed two checks with the letter to MSPRC: a check issued by State Auto for $87,500.00 made jointly payable to MSPRC and/or Ms. Wetterman's estate and a check from Mr. Ray's law firm's trust account made jointly payable to Plaintiff and Medicare for $18,596.87, both endorsed by Plaintiff. (*Id.* ¶ 76). Plaintiff did so to "defray Medicare's ongoing assessment of interests against Ms. Wetterman's estate for nonpayment of MSPRC's final determination of Medicare's demanded reimbursement[]" while he expressly retained the right to contest Medicare's claim. (*Id.* ¶ 78).

On November 21, 2011, Plaintiff again requested waiver of Medicare's demanded reimbursement by filling out and submitting the appropriate form. (*Id.* ¶ 82). Specifically, Plaintiff argued that because the settlement proceeds from the tort recovery were based on a wrongful death action with no survivorship claim, Medicare did not have the right to recover

against the settlement pursuant to Ohio law. (*Id.* ¶¶ 68–71). On December 3, 2011, MSPRC advised Plaintiff that his internal administrative appeal of Medicare's initial decision was denied. (*Id.* ¶ 83). On December 5, 2011, MSPRC also advised Plaintiff that the estate owed a past-due debt of $92,075.30. (*Id.* ¶ 84).

On December 29, 2011, Plaintiff appealed Medicare's internal administrative review. (*Id.* ¶ 88). That appeal was rejected by MSPRC on February 6, 2012. (*Id.* ¶ 91). The initial decision was affirmed again on May 16, 2012 upon Plaintiff's request for reconsideration. (*Id.* ¶ 92). On July 3, 2012, Plaintiff appealed to an Administrative Law Judge ("ALJ"). (*Id.* ¶ 93). After conducting an oral hearing by telephone, ALJ Jane Van Duzer issued a written decision on October 28, 2014 ruling that the life insurance payment was not subject to Medicare's recovery under the MSP Act but upholding Medicare's prior internal decisions, which determined that Medicare was entitled to recover reimbursement under the MSP Act from Plaintiff against the wrongful death settlements. (*Id.* ¶ 97). Plaintiff appealed the ALJ's decision to the Medicare Appeals Council on December 19, 2014, assigning error to Medicare's recovery reimbursement from the wrongful death settlement. (*Id.* ¶ 98). Plaintiff did not make an escalation request regarding the Council's review of the ALJ's decision.

Based on the ALJ's decision, Coordination of Benefit and Recovery Systems ("COB&R")—formerly MSPRC—notified Plaintiff of the revised amount due to Medicare as $81,096.87 in principal and $24,921.55 in interest. (*Id.* ¶ 99). Accounting only for the $18,596.87 check as received from Plaintiff, it became clear to Mr. Ray that MSPRC had either lost or ignored the check issued by State Auto that he sent on October 10, 2011. (*Id.* ¶ 102). State Auto confirmed that the check issued for $87,500.00 to MSPRC had not been cashed. (*Id.* ¶ 101). As a result, State Auto reissued a replacement check on December 24, 2015, which Mr. Ray sent

4

to COB&R and Medicare, along with a letter explaining what he believed had occurred, and a $514.91 check issued from his former law firm's trust account to cover accrued interest. (*Id.* ¶ 104). Upon satisfying Plaintiff's outstanding Medicare balance of $106,611.78, Mr. Ray sent Medicare a letter on January 7, 2015 demanding a refund of $24,921.55 as interest "improvidently assessed" to Plaintiff based on his belief that Medicare had lost or ignored State Auto's originally issued check. (*Id.* ¶ 107). Medicare did not respond. (*Id.* ¶ 109).

Thereafter, Mr. Ray requested that the Medicare Appeals Council supplement the record with certified entries from the Probate Court designating Ms. Wetterman's estate's settlements as "provable only as a wrongful death claim," as he sought redress for Medicare's "improvidently assessed" interest through a second assignment of error. *(Id.* ¶¶ 111–12). Medicare never responded to Plaintiff's requests. (*Id.* ¶ 113). On August 25, 2018, a representative from the Medicare Appeals Council confirmed receipt of Plaintiff's request for review of the ALJ's decision. (*Id.* ¶ 115). To date, the Medicare Appeals Council has not issued a decision on Plaintiff's appeal.[2] (*Id.* ¶ 116).

On January 31, 2018, Plaintiff filed a complaint seeking writs of mandamus under 28 U.S.C. § 1361 that require Alex M. Azar II,[3] in his role as Secretary of the United States Department of Health and Human Services ("HHS"), and Constance B. Tobias, in her role as Chair of the Departmental Appeals Board of HHS (collectively "Defendants") to do the following: (1) require the Medicare Appeals Council to complete its assignment within the

---

[2] *Appeal Status Information*, HHS.GOV, ALJ Appeal Number 1-1042144714, https://dab.efile.hhs.gov/mod/appeals/public_status_result?utf8=%E2%9C%93&case_type=&case_year=&case_seq=Docket+Number&alj_appeal_number=1-1042144714&commit=Search (last visited July 11, 2019).
[3] Alex M. Azar II replaced Eric Hargan as Acting Secretary of Health and Human Services on January 20, 2018 and was consequently substituted as a defendant in this case pursuant to Federal Rule of Civil Procedure 25(d). (Defs. Mot. Dismiss, 1 fn.1, ECF No. 5).

administrative appeals process; (2) refund $24,921.55 plus interest to Plaintiff as erroneously assessed by Medicare; (3) pay Plaintiff's attorneys fees for legal services in bringing this case; and (4) reimburse Plaintiff's "deposit" of Mrs. Wetterman's estate's funds with Medicare of $106,671.78 plus interest. (*Id.* ¶¶ 118–67). Plaintiff also requests that the Court declare portions of the MSP Act and associated regulations unconstitutional and permanently enjoin Medicare from application of the "up-front" reimbursement statute. (*Id.* ¶ 167).

On May 14, 2018, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction. (ECF No. 5). Plaintiff filed his Memorandum Contra on May 29, 2018. (ECF No. 6). On June 11, 2018, Defendants filed their Reply. (ECF No. 7). Defendants' Motion to Dismiss is now ripe for review.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. S.W. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading[,]" and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (internal quotations omitted). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations. *Glob. Tech., Inc.*

*v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). This case involves the former.

When subject matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Roulhac v. Sw. Reg'l Transit Auth.*, No. 07CV408, 2008 WL 920354, at *2 (S.D. Ohio Mar. 31, 2008).

## III. ANALYSIS

### A. Medicare's Administrative Review Process

In 1980, Congress enacted the Medicare Secondary Payer Act[4] to assist with the increasing cost of healthcare. *Bio-Medical Applications Tennessee, Inc. v. Cent. States Se. and Sw. Areas Health and Welfare Fund*, 656 F.3d 277, 281 (6th Cir. 2011); 42 U.S.C. § 1395y(b). The Act works as follows:

> The MSP "makes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer." [*United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 21 (1st Cir. 2007)]. "This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay." *Cochran v. United States Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002). Consequently, the MSP makes Medicare a secondary payer and designates certain private entities—such as a group health plan, a worker's compensation plan, or an automobile or liability insurance plan—as "primary payers" that have the responsibility to pay for a person's medical treatment. *See Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279, 1282 (M.D. Fla. 2005); *see also* 42 U.S.C. § 1395y(b)(2)(ii). If the primary payer has not paid and will not promptly do so, however, Medicare can conditionally pay the cost of the treatment. *United Seniors*, 500 F.3d at 21 (citing 42 U.S.C. § 1395y(b)(2)(B)). The MSP empowers Medicare to seek reimbursement for any conditional medical payments from the primary payer—or from the recipient of the payment—if it is demonstrated that the primary payer has responsibility to pay.

---

[4] The MSP Act is part of the broader Medicare program.

*Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008). Such responsibility by the primary payer may be demonstrated by a judgment. 42 U.S.C. § 1395y(b)(2)(B)(ii). That is, "[i]f a Medicare beneficiary seeks medical expenses as damages in a lawsuit, and the parties settle the claim, the settlement demonstrates the tortfeasor's responsibility for those medical expenses, regardless of whether the tortfeasor admits liability. . . . The tortfeasor then becomes obligated to reimburse Medicare for the medical expenses." *Anderson v. Burwell*, 167 F. Supp. 3d 887, 897 (E.D. Mich. 2016) (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)). "If, however, the tortfeasor directly pays the settlement proceeds to the Medicare beneficiary, Medicare may seek reimbursement from the beneficiary." *Id.*

Once a Medicare beneficiary requests and receives a demand letter indicating the amount owed as reimbursement to Medicare under the MSP Act, the beneficiary may challenge the determination administratively. 42 C.F.R. § 411.37, *et seq*. The administrative review process includes: 1) redetermination; 2) reconsideration; 3) ALJ hearing; 4) Medicare Appeals Council review; and 5) judicial review in a federal district court. 42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.900–405.1140. The process can be lengthy so if the Medicare Appeals Council does not issue a decision within 90 days, the beneficiary may request that the Council escalate the appeal for judicial review. 42 C.F.R. §§ 405.1100, 405.1132(a). Upon receiving the Council's notice that it is not able to issue a final decision, dismissal order, or remand order, the beneficiary may file an action in Federal district court within 60 days. *Id.* § 405.1132(b). However, if the Council's adjudication period expires and the beneficiary does not request escalation, "the case remains with the Council until a final decision, dismissal order, or remand order is issued." *Id.* § 405.1136(a)(2).

If there is not a timely escalation request, judicial review of claims "arising under" the Medicare Act are only available after the Secretary renders a final decision on the claim. 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1395ff. Moreover, "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, [the Secretary], or any other officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h), as incorporated by 42 U.S.C. § 1395ii.

### B. Claims "Arising Under" the Medicare Act

Plaintiff contends that his claims do not "arise *under*" the MSP Act but rather "arise *out of* mismanagement and nonperformance" under the MSP Act. (Pl. Mem. Contra, 2). The Court does not find the two mutually exclusive.

A claim "arises under" the Medicare Act if the Act provides both the standing and substantive basis for the claim or if the claim is "inextricably intertwined" with the claim for medical benefits under the Medicare Act. *Heckler v. Ringer*, 466 U.S. 602, 614–15, 624 (1984). Whether a claim "arises under" the Medicare Act is read broadly even if the Constitution or another statue provides a basis for the claim. *Id.* at 615.

Plaintiff's first claim alleged in the Complaint is derived *directly* from Plaintiff's assignment of error as to Medicare's determination that it is entitled to reimbursement from the wrongful death settlement proceeds for conditional payment of Ms. Wetterman's medical care. Without Plaintiff's claim for medical benefits, which undoubtedly arises under the MSP Act, there would be no request for a writ of mandamus ordering the Council to make a decision regarding Plaintiff's appeal. *See Bird v. Thompson*, 315 F. Supp. 2d 369, 374 (S.D.N.Y. 2001)

(finding that a challenge to Medicare's right to reimbursement under the MSP Act from plaintiff's settlement from an insurance company, which involved benefits that were conditionally paid on plaintiff's behalf, was a claim arising under the Medicare Act).

Claims Two and Three allege that Medicare "engaged in continuing acts of misfeasance" (Compl., ¶ 133), and "acted in bad faith" (*Id.* ¶ 151) in processing the reimbursement amount at issue on appeal to the Council and requests writs of mandamus related to attorney fees and interest paid as a result. In Claims Four and Five, Plaintiff requests that this Court declare portions of the MSP Act—as they affect Plaintiff's payment of the up-front reimbursement amount and those similarly situated—unconstitutional as a violation of Due Process and asks for a permanent injunction to prevent Defendants from enforcing the statute and regulations. Claim Four also requests a writ of mandamus ordering Defendants to refund the amount currently in dispute before the Medicare Appeals Council. All of these claims are "inextricably intertwined" with Plaintiff's claim for medical benefits presented to the Council for review. *See Weinberger v. Salfi*, 422 U.S. 749, 762 (1975) (holding that direct constitutional challenges to the applicable provisions of the Social Security Act were claims arising under the Social Security Act); *Livingston Care Center, Inc. v. U.S.*, 934 F.2d 719, 720–22 (6th Cir. 1991) (holding that a provider's claims for consequential damages arising from HHS's negligence arose under the Medicare Act even though the Act did not provide for consequential damages). Section 405(h) "demands the 'channeling' of virtually all legal attacks through the agency, [in order to] assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts . . . ." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000); *see also Bodimetric Health Services v. Aetna Life & Casualty*, 903 F.2d 480, 487 (7th Cir. 1990) ("If litigants who have been denied

benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.").

Accordingly, all Plaintiff's claims arise under the Medicare Act.

### C. Subject Matter Jurisdiction

The burden is on Plaintiff to show that he satisfies the prerequisites for federal jurisdiction. Defendants argue that "[t]he sole and exclusive source of subject matter jurisdiction over claims for Medicare benefits is derived from 42 U.S.C. § 405(g), as incorporated in the Medicare Act by 42 U.S.C. § 1395ff(b)(1)(A)." (Defs. Mot. Dismiss, 2). As such, Defendants maintain that judicial review is only authorized after a final administrative decision has issued, which has not yet occurred here. (*Id.*) Plaintiff argues that 28 U.S.C. § 1361 trumps any argument by Defendants that Plaintiff must exhaust the administrative process when a federal government agency fails to perform. (Pl. Mem. Contra, 3).

Pursuant to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The Supreme Court has determined that in order to justify mandamus jurisdiction, "a plaintiff must show it has exhausted all other avenues of relief, and that the defendant owes the plaintiff a 'clear nondiscretionary duty.'" *BP Care, Inc. v. Thompson*, 398 F.3d 503, 514–15 (6th Cir. 2005) (quoting *Heckler,* 466 U.S. at 616). While both the Supreme Court and Sixth Circuit "have avoided deciding whether § 405(h) bars mandamus jurisdiction under 28 U.S.C § 1361, in the same way that it bars jurisdiction under §§ 1331 and 1346 . . . the Supreme Court has . . . muted the importance of the question by holding . . . that a litigant who has a remedy available

under § 405(h) has not met the exhaustion remedies requirement for mandamus." *Id*. at 515. In *Southern Rehabilitation Group, P.L.L.C. v. Sec. of Health and Human Services*, 732 F.3d 670, 678 (6th Cir. 2013), the Sixth Circuit held that plaintiffs who seek judicial review of claims arising under the Medicare Act must 1) "present[] their claims to the Secretary;" 2) "exhaust their administrative remedies resulting in a final decision;" and 3) not raise "federal question claims that are 'inextricably intertwined' with their claim for benefits." "[T]he Medicare statute's exhaustion requirement calls for a 'final decision' from the Secretary." *New Vision Home Health Care, Inc. v. Anthem, Inc.*, 752 Fed. Appx. 228, 235 (6th Cir. 2018) (citing 42 U.S.C. § 405(g)). The Council's decisions are the final decisions of the Secretary and "satisfy the jurisdictional prerequisite." *Id.* (citing 42 C.F.R. § 405.110(c)).

The underlying basis for Plaintiff's first claim for a writ of mandamus was properly presented to the agency and is awaiting a decision from the Medicare Appeals Council. (Compl., ¶ 116). However, Plaintiff has not yet obtained a decision from the Council regarding any adverse aspects of the ALJ's decision, so there is no final agency decision and Plaintiff has not exhausted his remedies as to Claim One. *Id.*

Further, Plaintiff is only "permitted to bootstrap [additional] state and federal causes of action to [his] request for judicial review of [his] reimbursement claim[]" if he has "satisfied the conditions and limitations Congress attached to judicial review under the Medicare Act." *Southern Rehab.*, 732 F.3d at 677; *see also New Vision,* 752 Fed. Appx. at 237 (holding that a litigant is required to pursue his tort and constitutional claims through the same Medicare appeals process). Therefore, regardless of whether Claim Two—Plaintiff's claim for redress for Medicare's improvidently assessed interest—was properly presented to the ALJ as a supplemental assignment of error (Compl., ¶¶ 111–13), Claims Two through Five must all have

been both presented to the agency *and* exhausted through the same administrative process. That has not occurred here.

While the Court is sympathetic to Plaintiff's understandable frustration with the MSP appeals process, "the fact that the claims have taken a very long time to be resolved or that the delay involves some other form of hardship" does not negate the exhaustion requirement prior to judicial review. *See Southern Rehabilitation,* 732 F.3d at 681–82. District courts lack jurisdiction over claims under the Medicare Act when a litigant fails to exhaust his administrative remedies. *BP Care*, 398 F.3d at 515.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction (ECF No. 5). The Clerk is **DIRECTED** to **ENTER JUDGMENT** accordingly and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

    /s/ Sarah D. Morrison_____
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE